ROBERT H. ROTSTEIN (SBN 72452)
rxr@msk.com
ERIC J. GERMAN (SBN 224557)
ejg@msk.com
JILL P. RUBIN (SBN 240019)
jpr@msk.com
MITCHELL SILBERBERG & KNUPP LLP
11377 West Olympic Boulevard
Los Angeles, California 90064-1683
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

Attorneys for Defendants,
NBC Universal, Inc., Gregory Thomas Garcia,
Twentieth Century Fox Film Corporation, and
Twentieth Century Fox Home Entertainment LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK GABLE a/k/a MARK PIZZUTI, | Case No. CV 08-4013 SVW (FFMx) |
| Plaintiff, | The Honorable Stephen V. Wilson |
| v. | **REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT** |
| NATIONAL BROADCASTING COMPANY ("NBC"), a California corporation, GREGORY THOMAS GARCIA, an individual; 20th CENTURY FOX FILM CORPORATION, a corporation, 20th CENTURY FOX HOME ENTERTAINMENT AND DOES 1 through 10, inclusive, | Time: 1:30 p.m.<br>Date: March 23, 2009<br>Ctrm: 6 |
| Defendants. | |

Mitchell
Silberberg &
Knupp LLP

2161211.5

REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' SUMMARY JUDGMENT MOTIONS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Mitchell
Silberberg &
Knupp LLP

2161211.5

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ..................................................................... 1

II.     PLAINTIFF HAS NOT RAISED GENUINE ISSUES OF
        MATERIAL FACT AS TO ACCESS. ....................................... 2

III.    *KARMA!* AND *EARL* ARE NOT SUBSTANTIALLY
        SIMILAR. ................................................................................ 10

        A.      The Works Are Not Substantially Similar Under *Funky
                Films*. ...................................................................... 10

        B.      Plaintiff's Attempt To Create Disputed Issues Of Fact On
                Substantial Similarity Is Unavailing. ......................... 18

IV.     CONCLUSION ...................................................................... 22

REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' SUMMARY JUDGMENT MOTIONS

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Aguilar v. Int'l Longshoremen's Union Local No. 10*,
966 F.2d 443 (9th Cir. 1992) ....................................................... 21

*Anderson v. Paramount Pictures Corp.*,
617 F. Supp. 1 (C.D. Cal. 1985) .................................................. 10

*Beal v. Paramount Pictures Corp.*,
20 F.3d 454 (11th Cir. 1994) ....................................................... 10

*Berkic v. Crichton*,
761 F.2d 1289 (9th Cir. 1985) ............................................... 11, 13

*Bevan v. Columbia Broad. Sys., Inc.*,
329 F. Supp. 601 (S.D.N.Y. 1971) ................................................ 6

*Carlton v. Steele*,
278 Fed. Appx. 352 (5th Cir. 2008) .............................................. 7

*Cavalier v. Random House, Inc.*
297 F.3d 815 (9th Cir. 2002) ................................................. 10, 22

*Cox v. Abrams*,
No. 93 Civ 6899 (RJW), 1997 WL 251532 (S.D.N.Y. May
14,1997) ....................................................................................... 7

*Dimmie v. Carey*,
88 F. Supp. 2d 142 (S.D.N.Y. 2000) ............................................ 6

*Eldred v. Ashcroft*,
537 U.S. 186 (2003) .................................................................... 20

*Fleener v. Trinity Broad. Network*,
203 F.Supp.2d 1142 (C.D. Cal. 2001) ........................................ 20

*Fogerty v. MGM Group Holdings Corp, Inc.*,
379 F.3d 348 (6th Cir. 2004) ....................................................... 7

*Funky Films, Inc. v. Time Warner Entm't. Co.*,
462 F.3d 1072 (9th Cir. 2006) ............................................. passim

Mitchell
Silberberg &
Knupp LLP

2161211.5

ii

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Herzog v. Castle Rock Entm't,*
    193 F.3d 1241 (11th Cir. 1999) ................................................................. 10

*Icon Enter. Int'l, Inc. v. Am. Prod. Co,*
    No. CV 04-124, 2004 WL 5644805
    (C.D. Cal. Oct. 7, 2004) (Wilson, J.)......................................................... 21

*Ideal World Marketing, Inc. v. Duracell, Inc.,*
    15 F.Supp.2d 239 (E.D.N.Y. 1998)............................................................ 21

*Idema v. Dreamworks, Inc.,*
    162 F. Supp. 2d 1129 (C.D. Cal 2001)....................................................... 16

*Jinro Am. Inc. v. Secure Inv., Inc.,*
    266 F.3d 993 (9th Cir. 2001) ....................................................................... 8

*Jorgensen v. Epic/Sony Records,*
    351 F.3d 46 (2d Cir. 2003) ............................................................. 2, 3, 4, 6

*Kouf v. Walt Disney Pictures & Television,*
    16 F.3d 1042 (9th Cir. 1984) ................................................. 10, 11, 14, 22

*Litchfield v. Spielberg,*
    736 F.2d 1352 (9th Cir. 1984) ............................................................. 10, 22

*McFarlane v. Sheridan Square Press, Inc.,*
    91 F.3d 1501 (D.C. Cir. 1996) ..................................................................... 7

*Merrill v. Paramount Pictures Corp.,*
    No. CV 05-1150 SVW................................................................... 3, 4, 6, 10

*Meta-Film Assoc., Inc. v. MCA, Inc.,*
    586 F. Supp. 1346 (C.D. Cal., 1984).......................................................... 4, 6

*Metcalf v. Bochco,*
    294 F.3d 1069 (9th Cir. 2002) ..............................................2, 18, 19, 20, 21

*Mowry v. Viacom Int'l Inc.,*
    No. 03 Civ. 3090 (AJP) 2005 WL 1793773
    (S.D.N.Y. July 29, 2005) ............................................................................. 7

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Narrell v. Freeman,*
  872 F.2d 907 (9th Cir, 1989) ..................................................................... 11

*Olson v. Nat'l Broad Co., Inc.,*
  855 F.2d 1446 (9th Cir. 1988) ............................................................ 12, 16

*Rice v. Fox,*
  330 F.3d 1170 (9th Cir. 2003) ......................................................... passim

*Rodriguez v. Heidi Klum Co. LLC,*
  No. 05 Civ. 10218 (LAP) 2008 WL 4449416
  (S.D.N.Y. Sept. 30, 2008) ............................................................................ 6

*Rosenfeld v. Twentieth Century Fox Film,*
  89 U.S.P.Q.2d 1797, 2009 WL 212958 ............................................... 16, 22

*Satava v. Lowry,*
  323 F.3d 805 (9th Cir. 2003) ..................................................................... 19

*Shur-Value Stamps v. Phillip Petroleum Co.,*
  50 F.3d 592 (8th Cir. 1995) ......................................................................... 7

*Smith v. Jackson,*
  84 F.3d 1213 (9th Cir. 1996) ..................................................................... 10

*Tomasini v. Walt Disney Co.,*
  84 F. Supp. 2d 516 (S.D.N.Y. 2000) ........................................................... 7

*U.S. v. Angelilli,*
  660 F.2d 23 (2d Cir. 1981) ........................................................................... 8

*U.S. v. Butcher,*
  557 F.2d 666 (9th Cir. 1977) ....................................................................... 7

*Weygand v. CBS Inc.,*
  43 U.S.P.Q.2d 1120 (C.D. Cal. 1997) ............................................. 7, 13, 17

*Williams v. Crichton,*
  84 F.3d 581 (2d Cir. 1996) ......................................................................... 10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Mitchell
Silberberg &
Knupp LLP

2161211.5

iv

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Mitchell
Silberberg &
Knupp LLP

2161211.5

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

## OTHER AUTHORITIES

4 *Nimmer On Copyright*, § 13.02[A] ........................................................................ 5

Fed. R. Civ. P. 56 ........................................................................................................ 21

Fed. R. Evid. 702 ........................................................................................................ 21

Local Rule 56-2 ............................................................................................................ 1

REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' SUMMARY JUDGMENT MOTIONS

## REPLY MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff's Opposition ("Opp.") to Defendants' motions for summary judgment fails to raise a genuine issue of material fact as to either access or substantial similarity of protected expression.  Plaintiff's access claim rests solely on his undocumented assertion that he mailed his unsolicited script *Karma!* to someone at Defendant Garcia's former talent *agency*, The Gersh Agency ("TGA"), but not to Garcia's individual *agent*, almost a decade before Garcia created *My Name is Earl* ("*Earl*").  But Plaintiff cannot establish that anyone at TGA read Plaintiff's script, much less provided it to Garcia.  Summary judgment is mandated for that reason alone.

Unable to refute these basic dispositive facts, Plaintiff's Opposition instead impugns the credibility of the third-party TGA witnesses (who have no stake or financial interest in the outcome of this case) and devolves into unsupported invective that mischaracterizes their testimony and focuses on collateral issues irrelevant to this case.  Courts have consistently held that such unsupported and collateral attacks on a witness's credibility cannot avoid summary judgment.[1]

Even assuming, for the sake of argument, that there were disputed issues of fact on access, summary judgment is required on the independent ground that Plaintiff has failed to raise a genuine issue of material fact as to substantial similarity of protected expression between the two works at issue. Many of the so-called similarities relied on by Plaintiff are so generalized and abstract as to

---

[1]  Plaintiff filed a "Statement of Genuine Issues of Material Fact" as well as Evidentiary Objections.  Defendants have directly responded to many of Plaintiff's purported "issues" in this Reply.  Plaintiff's "Statement of Genuine Issues" ("GIMF"), however, fails to comply with L.R. 56-2, which requires that it contain only a "concise statement setting forth the material facts as to which it is contended there is a genuine issue necessary to be litigated."  Plaintiff's GIMF also contains a number of entirely immaterial purported "issues" without, in many instances, citing to any supporting evidence.  To the extent that Plaintiff's "issues" are irrelevant and unsupported, Defendants have not responded.

constitute nothing more than uncopyrightable ideas and unprotected *scenes à faire*. Indeed, more often than not, Plaintiff's purported "similarities" are not similar at all, when looked at in the context of the works themselves

David Nimmer's declaration does not change this.  Although an esteemed copyright scholar, Nimmer is not a literary expert.  Moreover, in deposition, Nimmer actually *confirmed* the absence of substantial similarity of protected expression.  Critically, on cross-examination, Nimmer stated that only one of the analytical categories under the Ninth Circuit's extrinsic test – namely, theme – is substantially similar, and admitted that the respective plots, characters, settings, moods, dialogue, and sequences of events are not substantially similar.  Substantial similarity of theme alone cannot support a claim for copyright infringement.

Plaintiff's assertion that a combination of elements raises an issue of material fact under the extrinsic test is unavailing.  The primary case on which Plaintiff relies, *Metcalf v. Bochco*, 294 F.3d 1069 (9th Cir. 2002), is inapposite because it rested on defendant's concession of access and because it involved a pattern of similarities that does not exist here.  Cases following *Metcalf* have refused to apply it where, as here, a defendant disputes access and where no pattern of similarities exists.  Defendants are entitled to summary judgment.

## II.   PLAINTIFF HAS NOT RAISED GENUINE ISSUES OF MATERIAL FACT AS TO ACCESS.

Plaintiff concedes that to raise a genuine issue of material fact as to access he must show that Defendants had more than a "bare possibility" of access; he must demonstrate that Defendants had a *reasonable opportunity* to view Plaintiff's work.  Opp. at 19.  Plaintiff has failed to present the "significant, affirmative and probative evidence" of access required to establish that Defendants had a "reasonable opportunity" to view Plaintiff's work.  *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2003).  To the contrary, Plaintiff offers only naked "speculation or conjecture," which cannot defeat summary judgment.

1  *Merrill v. Paramount Pictures Corp.*, No. CV 05-1150 SVW (MANx), 2005 WL

2  3955653, * 7 (C.D. Cal. Dec. 19, 2005) (Wilson, J.) (internal citations omitted).

3       The Opposition asserts (at 9) that *Karma* and *Earl* are so similar that

4  "copying must have occurred" and implies that Nimmer agrees with this statement.

5  In fact, Nimmer said the exact opposite, testifying unequivocally that he could not

6  conclude that *Earl* was copied from *Karma!*.  Supplemental Declaration of Jill P.

7  Rubin ("Supp. Rubin Decl."), Exhibit ("Exh.") 1 (Deposition of David Nimmer

8  ("Nimmer Depo.") at 224:18-225:20).

9       Plaintiff's only alleged source of access is David Gersh of TGA, the owner

10  of the company where Ken Neisser, Garcia's former agent, once worked.[2]

11  Through a convoluted, speculative theory, Plaintiff conjectures that David Gersh (a

12  theatrical agent) received and read his script for a theatrical motion picture and

13  passed it on to Neisser (a *television* agent), who supposedly gave it to Garcia, who

14  held onto the script for years before creating *Earl* and in the meantime switched to

15  another talent agency.  Such a theory cannot withstand scrutiny.

16       As established in Defendants' Motions for Summary Judgment ("Mot.") at

17  9-10, Plaintiff has no documentary evidence that he actually sent his script to

18  anyone.  This militates against his access claim.  *See, e.g.*, *Merrill*, 2005 WL

19  3955653 at * 8; *Jorgensen*, 351 F.3d 46, 52 (affirming summary judgment where

20  plaintiff produced "no reasonable documentation that he actually mailed [tapes of

21  the allegedly infringed work]" to corporate employees"); *cf. Rice v. Fox*, 330 F.3d

22  1170, 1178 (9th Cir. 2003) (although plaintiff claimed he actually discussed project

23

24

---

25  [2]  Neisser's representation of Garcia ended in 1999, when Garcia left TGA and signed with CAA.  Declaration of Gregory Thomas Garcia in Support of

26  Defendants' Motions for Summary Judgment ("Garcia Decl.") ¶7.  Neither Gersh nor Neisser (nor TGA) has a financial interest in either Garcia or *My Name is Earl*,

27  which was created and sold long after Garcia retained a new agency.  Garcia Decl. ¶7.  Neisser no longer works in the entertainment business.  Supp. Rubin Decl., Ex.

28  4 (Deposition of Kenneth Neisser ("Neisser Depo.") at 85:20-86:23).

Mitchell
Silberberg &
Knupp LLP

2161211.5

1  with defendant's agent, access claim was "based on speculation, conjecture, and

2  inference.").

3      Second, the only "evidence" that Plaintiff proffers is his claim that he mailed

4  his script to David Gersh.  But David Gersh was not Garcia's agent; Ken Neisser

5  was.  The mere mailing of a script to a company is insufficient to raise a genuine

6  issue of fact as to access.  Mot. at 9-11 (citing cases rejecting corporate receipt

7  doctrine); *Merrill*, 2005 WL 3955653, *7-8; *Jorgensen*, 351 F.3d at 52-53.

8      Third, the uncontroverted evidence establishes as a matter of law that

9  Garcia, Gersh, and Neisser never read Plaintiff's script.  Both Gersh and Neisser

10 testified that they had no knowledge of Plaintiff's script and did not give it to

11 Garcia.  This testimony stands uncontroverted, again by itself mandating summary

12 judgment for Defendants on the access issue.

13     Fourth, even assuming that, contrary to their uncontroverted testimony,

14 Gersh or Neisser read Plaintiff's script, neither of those individuals supervised or

15 had creative input over *Earl*.  For yet this additional reason, Plaintiff has failed to

16 raise an issue of fact as to access.  Mot. at 11-12; *see Meta-Film Assoc.*, *Inc. v.

17 MCA, Inc.*, 586 F. Supp. 1346, 1357-58 (C.D. Cal. 1984).  *Cf. Rice* 330 F.3d at

18 1178 (access claim was "based on speculation, conjecture, and inference" even

19 though plaintiff claimed he actually spoke with defendant's agent and was a client

20 of the same agency).

21     Finally, Gersh and Neisser both had policies not to review unsolicited

22 submissions.  Declaration of David Gersh in Support of Defendants' Motions for

23 Summary Judgment ("Gersh Decl.")at ¶¶ 2,4; Supp. Rubin Decl., Exh. 4

24 (Deposition of David Gersh ("Gersh Depo.") at 20:14-24, 26:11-27:3, 29:25-

25 30:21); Declaration of Ken Neisser in Support of Defendants' Motions for

26 Summary Judgment ("Neisser Decl.") at ¶¶ 3,4; Supp. Rubin Decl., Exh. 3,

27 (Deposition of Kenneth Neisser ("Neisser Depo.") at 52:17-53:4; 96:25-97:2; 98:8-

28 19).  Plaintiff has proffered no evidence to show that Gersh and Neisser failed to

Mitchell
Silberberg &
Knupp LLP

2161211.5

4

1  follow those policies.  This, too, obviates Plaintiff's access claim.  *See* 4 *Nimmer*

2  *On Copyright*, § 13.02[A], at 13-18 ("access is negated to the extent that the

3  defendant company can demonstrate that its established procedures insulate

4  decision-making and creative personnel from unsolicited submissions").[3]

5       Recognizing that he can offer no evidence, Plaintiff raises a hodgepodge of

6  frivolous arguments, none of which raises a material fact issue as to access.

7       *First*, even though the uncontroverted evidence establishes that only Ken

8  Neisser acted as Garcia's agent, Plaintiff argues that David Gersh was also

9  Garcia's agent.  Even if true (which it is not), the argument is irrelevant.  As noted

10  above, it is undisputed that David Gersh never read Plaintiff's script and has no

11  recollection of ever having received it.  It is also undisputed that Gersh played no

12  supervisory or creative role in connection with *Earl*.

13       Moreover, the evidence establishes that David Gersh never acted as Garcia's

14  agent or otherwise was involved in his career.  Gersh Decl. ¶7.  Plaintiff's only

15  argument relies entirely on a "Continuity of Management" provision in the

16  standard WGA form rider attached to Garcia's contract, on which David Gersh's

17  name appears.  However, Gersh testified that his name appeared on the document

18  only as a matter of compliance with standard agency practice and that it was

19  customary for either him, his brother, or his father, as owners of the business, to be

---

[3]  Plaintiff argues that "there is substantial evidence that there was no formal or uniform agency policy or procedure concerning the destruction (or return) of unsolicited scripts in 1995." Opp. at 6.  Plaintiff is wrong.  Both Neisser and Gersh testified that there *was* such a policy.  Gersh Decl. at ¶¶2,4; Gersh Depo. at 20:14-24, 26:11-27:3, 29:25-30:21; Neisser Decl. at ¶¶ 3,4, Neisser Depo at 52:17-53:4.  No one testified to the contrary.  The fact that the current TGA custodian of records testified that no written copy of the policy can be *located* now (Declaration of Maureen Ferrero in Support of Plaintiff's Opposition ¶4) – some fourteen years later – does not mean that such a policy did not exist.  Plaintiff also claims that Neisser "conceded" that there was no agency-wide policy (Opp. at 6), but Neisser did no such thing.  Rather, he testified that the unsolicited submissions policy "was a topic that was discussed with regularity on an informal basis.  I would remind people in my department.  We do not accept unsolicited material . . . This was a constant, if anything was ever discussed agency-wide, it was you do not accept unsolicited material ,. . . It was certainly a rule in my department.  And I know it was a rule in the feature lit department." Neisser Depo. at 90:17-92:9.

Mitchell
Silberberg &
Knupp LLP

2161211.5

REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' SUMMARY JUDGMENT MOTIONS

listed on such a document even where they had no actual agent responsibility. Gersh's testimony stands uncontroverted.

*Second*, Plaintiff relies on *Bevan v. Columbia Broad. Sys., Inc.*, 329 F. Supp. 601, 609-10 (S.D.N.Y. 1971), to argue that the receipt of a manuscript at a defendant's principal corporate office is sufficient to raise a triable issue of fact as to access. However, the so-called corporate receipt doctrine of *Bevan* is not the law. First, Plaintiff mis-cites *Bevan* as a Ninth Circuit case and incorrectly refers to the "Court of Appeal [sic]" in quoting from the opinion. In fact, *Bevan* is a district court case out of the Southern District of New York. Second, the Ninth Circuit has never adopted *Bevan's* "corporate receipt" doctrine. To the contrary, subsequent courts have uniformly criticized *Bevan* and rejected the notion that bare corporate receipt is sufficient to raise an issue of fact as to access. *See Meta-Film*, 586 F. Supp. at 1357-58;[4] *see also Dimmie v. Carey*, 88 F. Supp. 2d 142, 146-47 (S.D.N.Y. 2000) (characterizing *Bevan* as "(arguably) out-dated") (collecting cases); *Jorgensen*, 351 F.3d 46, 53 (2d Cir. 2003) (declining to adopt the doctrine) (collecting cases). Indeed, numerous courts – including this Court – have since granted summary judgment where, as here, plaintiff merely relies on the corporate receipt doctrine, *Merrill*, 2005 WL 3955653 at *7; *see also Rodriguez v. Heidi Klum Co. LLC*, No. 05 Civ. 10218 (LAP) 2008 WL 4449416, *2 (S.D.N.Y. Sept. 30, 2008) (finding no access although plaintiff alleged she showed treatment to defendant's agents).

*Third*, Plaintiff attacks the credibility of third parties David Gersh and Ken Neisser.[5] However, where, as here, the moving party's declarations are unopposed,

---

[4] Plaintiff tries to distinguish *Meta-Film* by arguing that the *Meta-Film* plaintiff "offered not a shred of evidence of access" Opp. at 24. But there is even less evidence of access here than in *Meta-Film*, where the initial link in the purported access chain admitted receiving plaintiff's script. *Meta-Film*, 586 F. Supp. at 1353.

[5] Plaintiff also tries to create a triable issue of fact by challenging Garcia's credibility based on his tongue-in-cheek responses to media interviewers regarding immaterial issues. Opp. at 14-16. This shows merely that Garcia is a comedy

(…continued)

Mitchell
Silberberg &
Knupp LLP

2161211.5

6

"the court must accept facts properly alleged therein." *Weygand v. CBS Inc.*, 43 U.S.P.Q.2d 1120, 1124 (C.D. Cal. 1997); *see Fogerty v. MGM Group Holdings Corp, Inc.*, 379 F.3d 348, 353-55 (6th Cir. 2004) (plaintiffs do not create triable issues simply by challenging the credibility of defense witnesses); *Shur-Value Stamps v. Phillip Petroleum Co.*, 50 F.3d 592, 597 n.5 (8th Cir. 1995) ("In attacking the movant party's witness' credibility … the nonmovant must show concrete evidence."); *Mowry v. Viacom Int'l Inc.*, No. 03 Civ. 3090 (AJP) 2005 WL 1793773,*8, (S.D.N.Y. July 29, 2005) (no access because court would have had to assume that defendants lied when they said that they had never heard of plaintiffs screenplay); *Tomasini v. Walt Disney Co.*, 84 F. Supp. 2d 516, 521 (S.D.N.Y. 2000) (no issue of fact as to access where plaintiff merely attacked the alleged intermediary's credibility); *Cox v. Abrams*, No. 93 Civ 6899 (RJW), 1997 WL 251532 at *4 (S.D.N.Y. May 14,1997) (same); *McFarlane v. Sheridan Square Press, Inc.*, 91 F.3d 1501, 1514 (D.C. Cir. 1996) (no issue of fact when there was conflict between two witnesses' recollections of a conversation as the differences were "so narrow that it appears to reflect only sloppiness and a slight over-generalization, not deceit").[6]  In sum, like the unsuccessful plaintiff in *Mowry*,

---

(…continued)

writer.  *See Fogerty v. MGM Group Holdings Corp, Inc.*, 379 F.3d 348, 353-55 (6th Cir. 2004) (alleged inconsistencies in witness testimony insufficient to independent create a genuine issue of material fact as there were "[t]oo many competing inferences" as to why the statements might have been made); *Carlton v. Steele*, 278 Fed. Appx. 352, 354-55 (5th Cir. 2008) (contradictory statements by plaintiff who was both mad at an individual and did not know that individual did not raise a material issue of genuine fact or create and an inference that he was lying regarding other material issues).

[6]  The case on which Plaintiff relies, *U.S. v. Butcher*, 557 F.2d 666 (9th Cir. 1977), is inapposite. First, *Butcher* concerned credibility determinations made at a jury trial, not in connection with summary judgment. *See Weygand*, 43 U.S.P.Q.2d at 1124 ("[t]he opposing party may be able to attack the declarants' credibility if the case goes to trial, 'but such impeachment would affect the weight of the evidence, not its admissibility, and it is immaterial for summary judgment purposes.") (internal citations omitted).  Second, Plaintiff acknowledges (Opp. at 8) that *Butcher* requires a showing that the witness "knowingly testified falsely" concerning a material matter.  Plaintiff cannot and here has not even attempted to make such a showing.

1   Plaintiff here improperly asks this Court to speculate that the TGA witnesses are

2   lying.  Plaintiff's unsupported assertions cannot give rise to a genuine issue of

3   material fact.[7]

4       *Finally*, Plaintiff seeks to establish access through so-called "expert" Eric

5   Sherman.  To the extent Sherman tries to raise an issue of fact based on his view of

6   industry custom and practice, the testimony is inadmissible.  *See Jinro Am. Inc. v.*

7   *Secure Inv., Inc.*, 266 F.3d 993, 1005-06 (9th Cir. 2001) (refusing to allow expert

8   to testify that Korean businesses are corrupt and engage in complicated business

9   transactions to evade Korean currency laws); *U.S.  v. Angelilli*, 660 F.2d 23, 41 (2d

10   Cir. 1981) (finding that allowing jury instruction permitting inference of individual

11   behavior from evidence of custom was in error, since doing so "would defy the

---

[7] Regardless, Plaintiff's purported challenges to these individuals' credibility are both inaccurate and immaterial. The examples of Plaintiff's mischaracterizations are legion. *See e.g.*, Opp. at 5. (Although Plaintiff asserts that Gersh was listed by Garcia on the WGA rider, nothing in the record indicates that Garcia was the one who wrote Gersh's name on that document.); Opp. at 5; Neisser Depo. at 25:17-26:1; Gersh Depo. 44:1-47:3 (Plaintiff implies that Gersh and Neisser worked in the same department, when in fact Gersh was in the features department and Neisser worked in television.); Opp. at 6, 22, Second Amended Complaint ("SAC"), Garcia Decl. at ¶¶6,7,17, Neisser Decl. at ¶2 (Plaintiff alleges that Neisser and Gersh are self-interested; in truth, neither are parties to the litigation, and neither receives commissions from *Earl*, which was created after Garcia was no longer represented by The Gersh Agency.); Opp. at 5,  Neisser Depo. at 88:22-89:19 (Plaintiff asserts that Gersh "would occasionally drop in on Neisser's television literary department meetings, even though Neisser actually testified that he had no regular meeting with Gersh and that Gersh did not attend Neisser's meetings, although "it is possible in ten years he might have dropped in to say something."); Opp. at 5; Neisser Depo. at 43:9-45:11; Gersh Depo. at 44:1-47:3, 88:22-90:2 (Plaintiff claims that Gersh and Neisser "worked in close proximity," an inference drawn from the mischaracterization of their testimony regarding the nature and frequency of meetings at TGA in 1995.  However, despite the passage of fourteen years, both men testified quite clearly that, while it is possible that Gersh and Neisser may have both attended some all-agent meetings – Gersh was not definitive about whether the current practice of weekly all-agent meetings had begun in the mid-'90s – Gersh and Neisser did not attend each other's department meetings, had separate business practices, and had only informal and infrequent dealings with each other.); Plaintiff's Statement of Genuine Issues of Material Fact (No. 34), Neisser Depo. at 40:2-41:3; 76:23-77:12; Gersh Depo. at 14:15-15:1 (Plaintiff states that "Neisser and Gersh contradicted each other's testimony as to whether TGA was on one, two, or three floors in 1995," even though Neisser actually testified that he started on the second floor and moved to the first floor and Gersh testified that he could not remember how many floors TGA occupied in 1995.).

1   principle of the individuality of guilt to hold that a defendant's mere membership

2   in an organization practicing a particular type of crime could be used to show that

3   the defendant himself committed such a crime.").

4   　　　In any event, Sherman's testimony actually underscores the *absence* of

5   access as a matter of law.  Sherman conceded, among other things, that he (i) has

6   no personal knowledge of TGA's policies and practices in 1995 (or any other time)

7   regarding unsolicited scripts.  Supp. Rubin. Decl., Ex. 2, (Deposition of Eric

8   Sherman ("Sherman Depo.") at 77:9-24); (ii) has no personal knowledge whether

9   anyone at TGA read or even received Plaintiff's script.[8] *Id.* at 25:14-17, 44:12-23;

10  and (iii) does not know David Gersh or Ken Neisser or have knowledge of David

11  Gersh's willingness in 1995 to read unsolicited scripts.  *Id.* at 39:6-9.  Sherman

12  conceded that, if TGA had received Plaintiff's script, there were a number of

13  "hypothetical" paths the script could have followed.  *Id.* at 43:23-44:23.  Namely

14  the script could have been "shredded, returned, read, summarized or not."  *Id.* at

15  41:15-41:18.  Sherman also conceded that the script is rife with grammar, spelling,

16  and typographical errors, which would discourage those in the entertainment

17  industry from reading it, as would the stars, moons, and glitter in the envelope.  *Id.*

18  at 26:18- 29:3, 48:9-15.  Finally, Sherman's own writings establish that, as a matter

19  of custom and practice, literary agencies like TGA in the 1990s had policies not to

20  read unsolicited manuscripts like Plaintiff's *Karma!*.  *See Id.* at 39:24-40:11, 50:2-

21  51:11, Exs. 411, 412.[9]

---

22  [8] On the date of filing for this Reply, and one week after Sherman's deposition,

23  Plaintiff served an Errata Sheet (clearly based on a conversation between Sherman and Plaintiff's attorney) in which Sherman attempts to recant his definitive statement that he has "no specific facts" (Sherman Depo. at 44:23) as to whether

24  anyone at TGA read *Karma!* and instead, attempts to refer to the speculative and unsupported statements in his declaration and deposition as somehow constituting

25  "specific facts."  Such eleventh-hour actions wholly undermine any credibility

26  Sherman might otherwise have.

27  [9] Finally, although Plaintiff states (Opp. at 8) that Plaintiff was struck by the so-called "striking similarities" between the works at issue, he does not argue that striking similarity is a substitute for proof of access.  Nor could he.  As discussed

28  in Section III.A., the works are not substantially similar, much less strikingly so.

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　(…continued)

Mitchell
Silberberg &
Knupp LLP

2161211.5

9

III.    *KARMA!* AND *EARL* ARE NOT SUBSTANTIALLY SIMILAR.[10]

    A.    <u>The Works Are Not Substantially Similar Under *Funky Films*.</u>

       Plaintiff's failure to raise a genuine issue of material fact as to access by itself mandates summary judgment for Defendants.  However, summary judgment is also required because Plaintiff fails to raise a genuine issue of fact as to substantial similarity of protected expression under the Ninth Circuit's extrinsic test: namely, that there must be "articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events."  *Funky Films, Inc. v. Time Warner Entm't. Co.*, 462 F.3d 1072, 1077 (9th Cir. 2006) (internal citations omitted); *see also Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir. 1984).

       As a threshold matter, Plaintiff ignores or misstates three significant principles.  First, contrary to Plaintiff's assertion, summary judgment is routinely granted under the extrinsic test, both in the Ninth Circuit and elsewhere.[11]  As the court in *Funky Films* stated:

---

(…continued)
Moreover, Plaintiff's own expert concluded that the works were not strikingly similar and that he could not conclude that *Earl* was copied from Plaintiff's script. Supp. Rubin Decl., Ex. 1 (Deposition of David Nimmer ("Nimmer Depo.") at 36:13-18).

[10]  In his SAC, Plaintiff contended that the first three seasons of *Earl* infringed his screenplay.  Defendants therefore addressed those allegations in their Motion. In his Opposition, Plaintiff and Nimmer focus only on season one.  Thus, Plaintiff has abandoned any claim to substantial similarity based on subsequent seasons for this motion.  The court therefore need only review Plaintiff's script and the pilot and the first season of *Earl*.  Declaration of Jill P. Rubin in Support of Defendants' Motion for Summary Judgment ("Rubin Decl.") Exhs, D, F.

[11]  *See also Merrill*, 2005 WL 395563 at *9 (Wilson, J.) (summary judgment for defendants under extrinsic test); *Funky Films*, 462 F.3d at 1072 (same); *Rice*, 330 F.3d at 1174 (same); *Cavalier v. Random House, Inc.* 297 F.3d 815, 822 (9th Cir. 2002) (same); *Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir. 1996) (same); *Litchfield v. Spielberg*, 736 F.2d 1352, 1355 (9th Cir. 1984) (same); *see also Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1257 (11th Cir. 1999) (same); *Williams v. Crichton*, 84 F.3d 581, 588 (2d Cir. 1996); *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 460 (11th Cir. 1994) (same); *Anderson v. Paramount Pictures Corp.*, 617 F. Supp. 1 (C.D. Cal. 1985) (dismissing plaintiff's copyright infringement claim with prejudice).

1    Although "summary judgment is not highly favored on the substantial

2    similarity issue in copyright cases," *Berkic v. Crichton*, 761 F.2d 1289, 1292

3    (9th Cir. 1985), substantial similarity "may often be decided as a matter of

4    law." *Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*,

5    562 F.2d 1157, 1164 (9th Cir. 1977).  Indeed, "[w]e have frequently

6    affirmed summary judgment in favor of copyright defendants on the issue of

7    substantial similarity." *Shaw v. Lindheim*, 919 F.2d 1353, 1355 (9th Cir.

8    1990).  *See Berkic*, 761 F.2d at 1292 ("we have frequently affirmed

9    summary judgments in favor of copyright defendants on the substantial

10   similarity issue") (citing cases); *see also Kouf*, 16 F.3d at 1045-1046

11   (finding no substantial similarity as a matter of law).

12   Moreover, the normal summary judgment standard applies to copyright cases.

13   *Kouf*, 16 F.3d at 1045 n.3  (rejecting contention that heightened standard applies in

14   copyright cases).

15       Second, that both sides have experts does not require the Court to deny

16   summary judgment.  Courts have granted summary judgment for defendant where

17   both sides submit expert testimony.  *Rice*, 330 F.3d at 1179.  Indeed, courts have

18   so ruled even in cases where plaintiff had an expert and defendant did not.[12]

19       As discussed in detail in Defendants' moving papers, summary judgment is

20   required where a plaintiff merely seeks to protect ideas and *scenes à faire*.  The

21   most recent articulation of this principle is set forth in *Funky Films*, 462 F.3d at

22   1077, which mandates analysis of "not the basic plot ideas for stories, but the

23   actual concrete elements that make up the *total* sequence of events and the

24   relationships between the major characters."  Moreover, *Funky Films* cautions that

25   "in undertaking the extrinsic test, the Court must take care to "filter out and

---

[12] *See Narrell v. Freeman,* 872 F.2d 907, 913 (9th Cir, 1989); *Olson v. Nat'l Broad Co., Inc.,* 855 F.2d 1446, 1450 (9th Cir. 1988) (affirming grant of judgment notwithstanding verdict).

Mitchell
Silberberg &
Knupp LLP

2161211.5

disregard the non-protectable elements," such as "*scenes à faire*, which flow naturally from generic plot-lines." *Id.* at 1077 (internal citations omitted).

Finally, *Funky Films* instructs that differences between works play a significant role in application of the extrinsic test and that failure to credit these differences creates false impressions of similarity: "At first blush, these apparent similarities in plot [in the works at issue] appear significant; however, an actual reading of the two works reveals greater, more significant differences and few real similarities at the levels of plot, characters, themes, mood, pace, dialogue, or sequence of events." *Funky Films*, 462 F.3d at 1078 at 1078; *Olson v. Nat'l Broad. Co., Inc.*, 855 F.2d 1446, 1450 (9th Cir. 1988).

Plaintiff's Opposition ignores Ninth Circuit law and utterly fails to raise a genuine issue of material fact as to substantial similarity of protected expression. Under each category of the extrinsic test, Plaintiff fails far short of raising a genuine issue of fact as to protected expression.

**Sequence of Events.**  As noted, the Court in *Funky Films* held that the extrinsic test requires an analysis of, among other things, "the actual concrete elements that make up the total sequence of events."  462 F.3d at 1077 (internal citations omitted).  Plaintiff's opposition runs afoul of this mandate.  Instead, Plaintiff and his expert purport to analyze the sequence of events (in conjunction with plot), but in fact ignore the concrete elements that make up the total sequence of events of *Karma!* and *Earl*.

In any event, as demonstrated in the Motion (Mot. at 14-16) the sequences of events in each work is *dissimilar* as a matter of law.  To summarize, *Karma!* traces the travails of ex-cop Frankie through his arrest for bribery, imprisonment and release, his confrontation with an angel, and his involvement in a drug bust, leading to his death.  *Earl*, a television comedy series, has no episode or series of episodes that contains a remotely similar sequence of events.  Even alleged similarities upon which Plaintiff places heavy reliance – the winning of a lottery

1   and the main characters' arrest – occur at markedly different stages in each work.[13]

2   In short, *Karma!* and *Earl* share no substantial similarities in sequence of events.

3   It is highly significant that Nimmer conceded that the works' sequences of events,

4   in isolation, are not substantially similar.  Nimmer Depo. 125:8-11.

5       ***Plot.***  "[G]eneral plot lines are not protected by copyright law; they remain

6   forever the common property of artistic mankind."  *Funky Films*, 462 F.3d at 1081,

7   quoting *Berkic*, 761 F.2d at 1293; *see also Weygand*, 43 U.S.P.Q.2d at 1125-26.

8   In an apparent attempt to make the works seems more similar than they are,

9   Plaintiff's Opposition relies only on general similarities and improperly ignores

10  plot differences.  In so doing, Plaintiff fails to conduct the proper extrinsic test

11  analysis.[14]

12      Indeed, Plaintiff has not come close to raising a genuine issue of material

13  fact as to substantial similarity of plot.  Instead, Plaintiff relies on selective,

14  abstract similarities that receive no copyright protection.  For example, Plaintiff

15  cites as purported similarities that both main characters "fall" – one is hit by a car,

16  the other loses his job.  The idea of a character "falling" is general and

17  uncopyrightable.  Being hit by a car and losing a job as a police officer are

18  dissimilar. The assertion that both Frankie and Earl have karmic epiphanies is an

19  unprotected idea.  At a concrete level, a confrontation with a super angel who can

20  fly is not similar to watching a real-life talk show host speak about his life.  While

21  both Frankie and Earl win the lottery, they do so to different extents and use the

---

22   [13]  Frankie is arrested at the beginning of *Karma!* whereas Earl is not arrested until

23   the end of Season Two of *Earl*.  Thus, although both characters spend time in jail, this occurs at entirely different points in the sequence of events.

24   [14]  Moreover, a court must examine Plaintiff's claims of plot similarity through an

25   actual reading of the two works and an analysis of whether apparent plot similarities are overcome by more significant *differences.  Funky Films*, 462 F.3d

26   at 1078.  However, Nimmer testified at deposition that he did not address any of the differences in the works, because to consider the differences would have taken

27   hundreds of pages.  Nimmer Depo. 113:20-114:7.  This testimony demonstrates the significant dissimilarity between *Karma!* and *Earl*.  Accordingly, Plaintiff's

28   Opposition ignores even the major differences, as prohibited by *Funky Films*.

Mitchell
Silberberg &
Knupp LLP

2161211.5

REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' SUMMARY JUDGMENT MOTIONS

1  money for different purposes.  Frankie wins $2,000,000, half of which he uses to

2  build an orphanage; Earl wins $100,000, enough to support his quest to make

3  amends with those on his list, but not enough to permit him to live anywhere other

4  than a motel.

5      Plaintiff's also relies on alleged plot elements that are patently *dissimilar*.

6  For example, there is no substantial similarity between a picture of an angel

7  (*Karma!*) and a lottery ticket (*Earl*); or taking bribes as a police officer (*Karma!*)

8  and petty theft (*Earl*).  And while Plaintiff claims that both Earl and Frankie are

9  guided by lists, the concrete expression of such an abstract concept is dissimilar.

10  Mot. at 14-15.  Nimmer confirms this difference.  Nimmer Depo. at 117: 22-24

11  (Q: "Does Frankie make a list of people he's harmed?"; A: "Not that I recall.")

12      In sum, the plots of the two works are not substantially similar.  Nimmer

13  conceded that this was the case.  Nimmer Depo. 125:3-7.

14      **Character**.  Similarity between characters at an abstract level is insufficient

15  for a finding of substantial similarity.  *Kouf*, 16 F.3d at 1045; *Funky Films*,

16  462 F.3d at 1079.  Moreover, differences in characters are directly relevant to

17  analysis of substantial similarity.  *Funky Films*, 462 F.3d at 1079.  Finally, it is

18  improper under the extrinsic test to ignore characters that have no counterpart in

19  the other party's work.  *Id*.  Proper application of the extrinsic test reveals that the

20  characters in the works here are dissimilar as a matter of law.

21      First, Plaintiff blatantly ignores differences between the main characters that

22  eviscerate any claim of substantial similarity.  Frankie is a disgraced New York

23  City ex-cop and ex-con in his mid-forties with a bitter attitude, foul mouth, and

24  short temper who is a seasoned extortionist and who was kicked off the police

25  force for corruption.  He has an unborn son.  In contrast, Earl is an early thirties

26  "redneck" and likable loser with a positive, humorous attitude towards life who is

27  neither an ex-police officer (or a current police officer) nor a skilled shakedown

28  artist, but rather a bumbling ex-petty thief seeking reform.  He does not die, has no

unborn son, and receives no otherworldly visitation.  Yet Plaintiff and his expert disregard these concrete differences and assert that the characters are similar because both are white, lower class, and thieves with a history of "treating people badly."  Opp. at 12.  Such an analysis is precisely the type that the Ninth Circuit has rejected.

The only other characters that Nimmer compares are Toni Ann from *Karma!* and Joy from *Earl*.  Again, the alleged similarities relate to abstract elements that are not copyrightable.  Swearing, drug use, the ability to handle a gun, and cynicism are simply too abstract for copyright protection.  And nowhere does Plaintiff's Opposition consider the concrete differences between these characters, as described in the Motion (Mot. at 16-18).[15]

Moreover, by omitting a discussion of other key characters in the two works – *e.g.*, the Angel, the villainous James Randsom, and Father Augustus from *Karma!*; Randy and Catalina from *Earl* – Plaintiff has ignored the Ninth Circuit's mandate to consider characters who have no counterpart in the opposing party's work.  Again, in deposition testimony, Nimmer admitted that taken "just as characters" the characters in *Karma!* and *Earl* are not substantially similar. Nimmer Depo. 126:10-13.

**Mood.**  *Karma!* is a drama while *Earl* is a comedy.  Second Amended Complaint ("SAC") ¶14, Declaration of David Nimmer, Exh 1 ("Nimmer Report") at ¶15.  Plaintiff's claim that *Karma!* is a "drama punctuated by comedy" is tenuous at best.  Nimmer Report" at ¶15; Declaration of Jeff Rovin, Exh 1 ("Rovin Report") at ¶¶34-35.  But even assuming *arguendo* that Plaintiff's characterizations are accurate, the moods still are not substantially similar—a comedy (*Earl*), by

---

[15]  The other characters that Plaintiff compares – Shrimp from *Karma!* and Darnell aka Crabman from *Earl* – bear no similarity to each other for the reasons discussed in the Motion.  The otherwise completely dissimilar characters named Sonny and Coco in both works have no significance for the reasons discussed in the Motion. Again, Nimmer does not refer to them.

definition, differs from a drama that is punctuated by comedy (*Karma!*).  Of

course, that two works have comedic elements does not make them substantially

similar.  For example, the movie *Animal House* is not substantially similar to

Woody Allen's *Annie Hall* even though both are comedies.  As a matter of law, the

moods of the two works at issue differ – Plaintiff's dark and violent *Karma!* is

highly dissimilar to the quirky, farcical *Earl*.  Once again, in deposition testimony

Nimmer admitted that, alone, the moods of *Karma!* and *Earl* are not substantially

similar.  Nimmer Depo. at 125:20-23.[16]

     ***Pace.***  It is undisputed that the two works are paced differently: *Karma!* is

paced as a feature-length motion picture while *Earl* is paced as an episodic one-

half hour television series.  *See* SAC at ¶ 2(d)(ii), Nimmer Report at ¶19.  In

deposition testimony, Nimmer stated that he had no opinion whether the pace of

*Karma!* and *Earl* are substantially similar.  Nimmer Depo. at 126:4-9.[17]

     ***Dialogue.***  "[E]xtended similarity of dialogue [is] needed to support a claim

of substantial similarity based upon this issue."  *Olson*, 855 F.2d at 1450 (9th Cir.

1988); *Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1185 n.67 (C.D. Cal

2001) ("[p]laintiffs again confuse the 'idea' conveyed by a particular piece of

dialogue with the protectable 'expression' thereof.").  No such extended similarity

exists here.  Plaintiff asserts, for example, that both Frankie and Earl shout toward

the sky, a trivial similarity at best.  Moreover, the actual dialogue that each

character speaks is dissimilar.  Rubin Decl., Exh. D at 127. And I'm not

apologizing for that either!"; Rubin Decl., Exh. F (Episode 16: *Earl*)*:* "Again!

---

[16] *See, e.g., Rosenfeld v. Twentieth Century Fox Film*, 89 U.S.P.Q.2d 1797, 2009 WL 212958, *3 (finding the two works' moods were substantially different: "The darker, more dramatic production envisioned by Plaintiffs, who describe it as a cross between a Broadway play and a theme park attraction, is nothing like the [defendants'] light-hearted and funny animated movie,")

[17] *See, e.g., Rosenfeld*, 89 U.S.P.Q.2d 1797, 2009 WL 212958, *3 (finding the two works' pace were substantially different because "[plaintiff's work] is designed to be an interactive live action show, while  [defendants' work] is an animated movie."

Mitchell
Silberberg &
Knupp LLP

2161211.5

REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' SUMMARY JUDGMENT MOTIONS

1    Come on I'm trying here? You saw me tryin'! That guy slammed the door in my

2    face! You know what that's it! I'm goin' back to the party, so if you wanna punish

3    me, gimme your best shot!...I will not be karma's bitch!").  Moreover, although

4    Plaintiff's Opposition asserts that both Frankie and Earl tell the main female

5    character that they'll "regret" having sex, Nimmer admitted that this was in error

6    and that Earl never uses those words.  Nimmer Depo. at 82:3-6.  Further, Nimmer

7    admitted that the dialogue of *Karma!* and the dialogue of *Earl* are not substantially

8    similar.  *Id*. at 130:24-131:3.

9        **Setting.**  The only substantive similarity Plaintiff alleges as to setting is that

10   both works are set in some kind of city (Opp. at 12).  Plaintiff, however, admits

11   that *Karma!* takes place in a big city setting (New York City) while *My Name Is*

12   *Earl* has a small city setting (an unidentified middle-American town) (Opp. at

13   12).[18]   The two settings are thus dissimilar.  Further, as is characteristic of his

14   opposition, Plaintiff ignores the other significant differences in setting (*e.g.*, urban

15   New York and night clubs in *Karma!* as opposed to trailer parks and strip malls in

16   *Earl*).  Moreover, Nimmer admitted that, taken by themselves, the settings of

17   *Karma!* and *Earl* are not substantially similar.  Nimmer Depo. at 125:24-126:3.

18       **Theme.**  Potential similarity in theme alone is insufficient to defeat summary

19   judgment on substantial similarity.  *Weygand*, 43 U.S.P.Q.2d at 1126-27.  Indeed,

20   Nimmer freely admitted that, alone, the "central theme" of the two works – turning

21   bad Karma into good or making amends – is an idea, not expression, and hence

22   unprotectable.  Nimmer Depo. at 97:24-98:21; 120:5-7.  Moreover, Nimmer

23   admitted that the concepts of people who do bad things changing their ways in an

24   attempt to improve their lives and of bad karma manifesting itself in future

25   endeavors are *scenes à faire* of a work about karma.  *Id*. at 102:6-9; 104:10-13.

26

27
_____
[18]  Plaintiff also claims that both works take place in the present.  Opp. at 12.  Such
28   a "similarity" is hardly a "substantial similarity of protected expression."

1    In sum, properly analyzing each element under the extrinsic test, the works

2    at issue are not substantially similar in protected expression.

3    **B.    Plaintiff's Attempt To Create Disputed Issues Of Fact On**

4    **Substantial Similarity Is Unavailing.**

5    Plaintiff cites *Metcalf v. Bochco*, 294 F.3d 1069 (9th Cir. 2002), for the

6    proposition that "when individual elements of a literary work are not individually

7    protectable, those same elements, taken together, may nevertheless be protectable

8    when placed in an original selection or arrangement."  Opp. at 29.  *Metcalf* is

9    inapposite, undermining the entire premise of Plaintiff's opposition.

10   In *Metcalf*, plaintiff sued for copyright infringement arising out of

11   defendants' television series.  Significantly, the defendant in *Metcalf* – in contrast

12   to Defendants here – *conceded* access for the purposes of summary judgment.  In

13   finding a triable issue of fact as to substantial similarity, the Ninth Circuit, based

14   on defendants' concession of access, applied the so-called "inverse ratio rule,"

15   noting that plaintiff's claim of similarity was "strengthened considerably by [the

16   defendant's] concession of access to their works."  294 F.3d at 1075.  In the instant

17   case, of course, not only do Defendants not concede access, but access is absent as

18   a matter of law.  As a result, established Ninth Circuit law holds that *Metcalf* has

19   no application.

20   *Rice*, 330 F.3d at 1178, is controlling.  In *Rice*, the plaintiff claimed that he

21   communicated the details of his work to the agent for one of the defendants.  In

22   addition, the plaintiff in *Rice* was represented by another agent in the same agency.

23   On appeal, the Ninth Circuit affirmed summary judgment for the defendant under

24   the extrinsic test, *separately* analyzing the relevant categories under the extrinsic

25   test – character, plot, setting, sequence of events, mood and pace.  As to each

26   individual category, the court determined that there was no substantial similarity

27   *Id.* at 1176-77.

Mitchell
Silberberg &
Knupp LLP

28

2161211.5

REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' SUMMARY JUDGMENT MOTIONS

The Ninth Circuit went on to address plaintiff's claim that, notwithstanding the absence of substantial similarity as to each literary category, *Metcalf* somehow salvaged his claim because both works had a substantially similar selection and arrangement of similar elements.  In other words, the plaintiff in *Rice* made the identical claim that Plaintiff makes here.  *Rice* squarely rejected this claim:

> [H]ere we are not presented with the same pattern of generic similarities as in *Metcalf*.  And even more important, our decision in *Metcalf* was based on a form of inverse ratio rule analysis: the plaintiff's case was" strengthened considerably by [defendants'] concession of access to their works." *Id.* at 1075.  In *Metcalf,* the writer and producer of the allegedly infringing work conceded that they had read the plaintiff's work.  Here, there is no such concession of access as most of Rice's claims are based purely on speculation and inference.  Because we are not confronted with the same totality of similarities and the same degree of access, this case is readily distinguishable from *Metcalf*.

*Accord*, *Funky Films*, 462 F.3d at 1082 n. 4 (distinguishing *Metcalf* where access is not conceded; *Metcalf* does not apply where alleged elements not numerous enough for protection).  *See Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003).

Rice and *Funky Films* are fatal to Plaintiff's substantial similarity claim.  Here, access is not only hotly contested, it does not exist.  Indeed, as noted, the access in *Rice* – deemed *speculative* and *conjectural* – also involved an alleged submission to a talent agency, and the access chain was closer than it is here.  Because *Metcalf* is inapplicable, Plaintiff's argument fails as a matter of law.

Metcalf is inapplicable for a second reason.  There, the court found that both works at issue contained a *pattern* of *similar* elements.  *Rice*, 330 F.3d at 1178.  In this case, Plaintiff seeks to protect categories of elements that are *different*, even by his own expert's account.  And neither Plaintiff's Opposition nor his expert declaration addresses the question whether the works have a substantially similar

pattern, as existed in *Metcalf.*   Nimmer Depo. at 125:8-11.[19]   Indeed, prior works

exist containing the same elements of which plaintiff complains here (*e.g.*,

*Highway to Heaven*, *A Christmas Carol*, *Almost An Angel*).[20]   To adopt Plaintiff's

assertion that a few, highly abstract purported similarities between Plaintiff's script

and a long-running television series give rise to substantial similarity of protectable

expression would ignore the well-established law of this Circuit and would be

anathema to the core concept that, as a matter of free speech, copyright law does

not permit an author to monopolize ideas.  *Eldred v. Ashcroft*, 537 U.S. 186, 219

(2003) (dissemination of copyrighted works advances significant speech interests).

In sum, none of the salient categories is substantially similar in protected

expression.  Even Plaintiff's own expert concedes as much.  Under *Rice* and *Funky

Films*, summary judgment is required.[21]

Neither does Nimmer's declaration avoid summary judgment.  As discussed

above, Nimmer acknowledged in deposition that all but one of the categories under

---

[19]  Plaintiff also makes the unsupported claim that Defendants have not met their burden to establish that any alleged similarities between *Karma!* and *My Name Is Earl* are *scenes à faire.*  Opp. at 31.  Regardless of who has the burden, Defendants have provided significant and uncontroverted evidence that establishes that the elements at issue are *scenes à fairee.*  Rovin Report ¶¶ 11-55).  Nimmer's report is silent on this issue other than a preliminary note that he purportedly focused on elements that he did not consider to be *scenes à faire.* Nimmer Report. ¶6.

[20]  Realizing that the prior art proffered by Defendants is devastating to his claims, Plaintiff objects to introduction of these three works on the grounds of "relevance." Yet, as Nimmer testified in his deposition, analysis of prior art is relevant to a determination of whether particular elements constitute *scenes à faire.*  Nimmer Depo. at 88:3-7.  *See also Satava* 323 F.3d at 812 (relying on prior art, namely photographs of glass-in-glass jellyfish sculptures (none of which was identical to each other), the Ninth Circuit concluded that the combination of elements plaintiff claimed to be substantially similar was unprotected).

[21]  Plaintiff suggests that a district court case, *Fleener v. Trinity Broad. Network*, 203 F.Supp.2d 1142 (C.D. Cal. 2001), should apply instead of the Ninth Circuit's decision in *Funky Films*, 462 F.3d 1072, a case decided five years later.  Even if an earlier-decided district court case could trump the Ninth Circuit's holding in *Funky Films* (and it cannot), *Fleener* is inapposite.  There, the court found substantial similarity in theme, setting, sequence of events and plot.  Here, even Plaintiff's own expert concedes that no such substantial similarity of individual elements exists.

1    the extrinsic test are not substantially similar and that the one that purportedly is –

2    theme – is unprotected idea.  Although Nimmer purports to rely on a *Metcalf*-type

3    analysis (though he never mentions the case) he admitted that he did not assess the

4    issue of access, which is the precondition for application of *Metcalf*.  For the

5    reasons discussed above, it is inappropriate to aggregate purported generic

6    similarities absent a concession of access (which has not occurred here).

7           Moreover, Nimmer's report is not competent on the issue of substantial

8    similarity because it does not conclude that the works are substantially similar, but

9    rather is a legal opinion.  His report  merely concludes that "the facts at bar present

10   a *situation* in which substantial similarity presents a *triable issue of fact*" (Nimmer

11   Report, ¶28) (emphasis added).  But, of course, whether a triable issue of fact

12   exists is a question of law to be decided by the Court (*see* Fed. R. Civ. P. 56) and is

13   not subject to expert testimony.  Fed. R. Evid. 702; s*ee Aguilar v. Int'l*

14   *Longshoremen's Union Local No. 10*, 966 F.2d 443, 447 (9th Cir. 1992) (matters

15   of law are "inappropriate subjects for expert testimony"); *Ideal World Marketing,*

16   *Inc. v. Duracell, Inc.,* 15 F. Supp. 2d 239, 244 (E.D.N.Y. 1998*)* (disallowing an

17   expert report offered with a motion for summary judgment, stating that "this

18   proposed 'expert' report, which offers a legal conclusion based upon the

19   undisputed facts before the Court, impinges upon the Court's role"); *see also Icon*

20   *Enter. Int'l, Inc. v. Am. Prod. Co,* No. CV 04-124, 2004 WL 5644805, *4, (C.D.

21   Cal. Oct. 7, 2004) (Wilson, J.) ("Similarly, instructing the jury as to the applicable

22   law 'is the distinct and exclusive province' of the court'") (citations omitted).

23   Nimmer acknowledges as much, conceding that he is not a literary expert, and thus

24   can only opine on issues of pure law.  Nimmer Depo. at 10:21-11:22.[22]

---

[22]  The Nimmer Report contains other inadequacies.  He acknowledged that his methodology was solely to "focus on the points of similarity," Nimmer Depo. at 214:11-216:10.  He therefore failed to consider significant differences, as required by *Funky Films*, despite stating that he "could have gone on for hundreds of pages about the differences between the two works" and agreeing that in general, one must evaluate differences as well as similarities to determine if two works are

(…continued)

Mitchell
Silberberg &
Knupp LLP

2161211.5

1    In sum, like the plaintiff in *Funky Films*, Plaintiff has put forward a list of

2 "apparent similarities" that upon "an actual reading of the two works reveals

3 greater, more significant differences and few real similarities at the level of plot,

4 characters, themes, moods, pace, dialogue, or sequence of events."  Plaintiff

5 further attempts to concoct substantial similarity by creating "a compilation of

6 random similarities scattered throughout the works," an approach that is inherently

7 subjective and unreliable.  *Cavalier*, 297 F.3d at 825 *quoting Litchfield v.*

8 *Spielberg*, 736 F.2d 1352, 1356 (9th Cir. 1994); *Kouf*, 16 F.3d at 1045-46

9 (rejecting plaintiff's "compilation of 'random similarities throughout the works'");

10 *Rosenfeld,* 89 U.S.P.Q.2d 1797, 2009 WL 212958, *6-7 (finding "unconvincing"

11 plaintiff's list of random similarities).  Because the works here are not substantially

12 similar under the extrinsic test, summary judgment for Defendants is required.

13 **IV.   CONCLUSION**

14    For the foregoing reasons and the reasons set forth in Defendants' motions

15 for summary judgment, Defendants are entitled to judgment as a matter of law.

16

17 Dated:  March 16, 2009                MITCHELL SILBERBERG & KNUPP LLP

18

19                                      By: /s/ Robert H. Rotstein
                                           Robert H. Rotstein
20                                         Attorneys for Defendants,
                                           NBC Universal, Inc., Gregory Thomas
21                                         Garcia, Twentieth Century Fox Film
                                           Corporation, and Twentieth Century Fox
22                                         Home Entertainment LLC

23

24

25 _____
   (…continued)
26 substantially similar.  *Id.* at 214:11-216:10; 216:23-217:3.  Asked where any such
   differences were reflected in his report, Nimmer testified that he "did not prepare
27 [his] report as a comprehensive guide to the trier of fact," having instead prepared
   it "to include all the conclusions [he] might testify to in favor of the party who
28 retained [him]."  *Id.* at 217:8-16.

Mitchell
Silberberg &
Knupp LLP
2161211.5

REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' SUMMARY JUDGMENT MOTIONS